or 5906. We do have one case on for oral argument today. That's Tau versus Arovast. Case number 245413. Each side will have 15 minutes. If appellate would like to reserve time for rebuttal, please let me know and be aware that you are responsible for keeping track of your own time. Mr. Sweeney, it's my understanding that you are here on behalf of appellate. Yes, Your Honor. This is Paul Sweeney from Squitarian Furon on behalf of appellant Nab Tau. Good morning. Good morning. And would you like to reserve time for rebuttal? Yes, Your Honor. Three minutes, please. Okay. And you may begin. Thank you. May it please the court. This appeal challenges the district court's dismissal of Mr. Tau's consumer protection claims, which are provided by statute, provided by common law, based on the prudential rightness doctrine. The complaint here alleges that Kosari the appellee sold two million defective air fryers at unreasonable risk of fire. The complaint further alleges that Kosari knew of that danger, but nevertheless misrepresented the safety features of the air fryers and failed to disclose the fire risk. Mr. Tau alleges that he purchased or overpaid defendant for defective air fryer that could cause fire based on misrepresentations and omissions, and he asserted statutory consumer protection claims that were provided by the California legislature and sought statutorily prescribed restitution and actual impunitive damages. In his decision, the district court found that Mr. Tau had Article III standing based on a number of cases from this court, including Hinojosa v. Coles, stating that an overpay for a product based on the defendant's deception. However, and although the district court found that Mr. Tau's claims were constitutionally right as that analysis overlaps with the general Article III standing analysis, the district court found that Mr. Tau's claims were not prudentially right based on a Kosari recall, excuse me, based on a recall Kosari had implemented that provided consumers with the opportunity to obtain a replacement air fryer. The district court should reverse and remand the district court's decision for, excuse me, the appellate court should reverse and remand the district court's decision for three primary reasons. First, the court should abrogate the prudential rightness doctrine, at least insofar as it would apply in a private dispute like this one, where plaintiff asserts common and statutory consumer protection claims and seeks monetary remedies provided by law. Um, this court has stated that a three judge panel is not bound by prior circuit law when an intervening Supreme Court decision undermines existing precedent. Well, this court has also stated the prudential rightness doctrine is one that does apply to us. Earlier, are you aware of a decision called Stockton versus Brown earlier this year? Yes, Your Honor. Okay, so how is it we're not bound by that decision? Um, Your Honor, this is, this is, um, this is a case involving statutory consumer protection laws. Generally, the prudential rightness doctrine applies in the administrative law context. In fact, there's really no case from this circuit in a case like this one, um, to the extent, the extent of prudential rightness doctrine applies at all. Recent Supreme Court precedent seriously undermines and in our court said the Supreme Court's observation in dry house does not relieve us of our obligation as a panel to follow our prudential rightness precedents. That may be true, Your Honor, but if it's true, then we're bound by it. Um, Your Honor, there's some key, there's some key cases and some authority that that panel did not consider, including a case that I saw right there. You're telling me I can disregard what a prior panel says because we don't think they considered all the right cases. Is there any authority within our court's case law that supports that proposition? I think the answer is going to be no. I'll accept that, Your Honor, but in a case trustees of electrical workers, health and welfare trust versus Marjo, Marjo, the discord, I rated two circuit precedents based on this is a quote from the case based on broad language of the Supreme Court in two cases that place a continuing validity of early earlier holdings in Syria. The doubt I would argue that I have just given you a citation to a case that speaks precisely to the Supreme Court precedent you're pointing at and the prudential rightness doctrine. And you're trying to tell me that because of what some other panel did concerning some other doctrine, I can disregard this precedent from earlier this year? I don't think that's a winning argument, counsel. Okay, Your Honor, I understand. Then I'll move on to the next argument. Then the prudential rightness doctrine should only be applied in the administrative law context, not a private dispute arising from consumer protection claims and seeking monetary remedies like this case. The Supreme Court first discussed the prudential rightness doctrine in Abbott versus Gardner, a 1967 case brought by a drug manufacturer, challenging, bringing a pre-enforcement challenge of FDA labeling requirements. In that case, the Supreme Court developed a two-part test for determining whether claims are prudentially right, recognizing that judicial action should be restrained when other policy branches act or will act, the Supreme Court. Counsel, let me accept your premise that the prudential rightness doctrine should be limited to the administrative context. Why isn't this administrative adjacent? We have an administrative agency that has entered in and the appellees here have consented to work with the agency to abide by certain statutory remedies to provide a full recall. It's an admission of possible wrongdoing and an acceptance of responsibility. If we were to allow this suit to go forward, why would any company ever agree to work with the CPSC again if it was just simply an invitation for somebody else to file a class action suit? Why isn't this administrative context adjacent if not directly involved in the administrative context? Even though the CPSC is not a party to this suit, it certainly is administrative adjacent. Your Honor, I'm not sure administrative adjacent is the standard here. In Abbott's labs, the Supreme Court said the purpose of the doctrine is to prevent judicial interference in ongoing government agency affairs. Here, the CPSC regulation at play states expressly that a corrective action plan like the replacement and recall at issue in this case have no legally binding effect. Moreover, the Consumer Protection and Safety Act, which is a statutory law passed by Congress, says that compliance with consumer product safety rules shall not relieve any person from liability of common law or under state statutory law to any person. In other words, Congress itself has stepped in here and says that compliance with a corrective action plan like Cassar did here doesn't relieve it from liability for state consumer protection laws like the ones that were being brought here. The Supreme Court has stated that the federal judiciary's obligation to hear cases within its jurisdictions virtually unflagging. In Lexmark, the court also said that just as a court cannot create a cause of action, it cannot ignore a cause of action. Here, that's exactly what Cassar is attempting to do because it's decided that it can block access to these laws, block access to statutorily prescribed remedies by offering a placement remedy that we argue doesn't even cover claims as individual claims, much less the claims of the class. The CPSC's involvement, as stated by the plain language of the implementing regulations and the statute itself, makes it clear that Mr. Tao is allowed to pursue these claims. Really, the district court's determination was even more inappropriate here because it ignored statutory language within the Consumer Product Safety Act itself. Counsel, you stated a few seconds ago that the recall somehow is inadequate. If that's not correct, please correct me, but tell me what's the issue with the recall? Why isn't that sufficient? Well, on an individual level, just as an example of one type of damages that Mr. Tao sees here are punitive damages, which are prescribed by statutory law in the California Civil Code, which states that in addition to actual damages, a plaintiff in a fraud case is entitled to punitive damages. The replacement remedy doesn't offer that. What actual damages has he suffered? He had a pocket expense to pay for the air fryer, Your Honor. Well, he bought the air fryer. He got the air fryer. The air fryer has worked for him. It hasn't exploded or caused any injury to him. So, I understand on a theoretical level, but I'm having a hard time figuring out how he has been injured. He wanted an air fryer. He's apparently going to be offered an air fryer that doesn't have the defect that some others have suffered from. What's the injury? The injury is that the air fryer has a defect that has been acknowledged by Kasari that has been the subject of 205 reports of fire and burning and injuries. And how has this plaintiff been injured? Because he bought and paid for an air fryer that's worthless. It cannot be used. He did use it. He was not injured by it. So, I'm still trying to figure out how the injury is anything but theoretical. The injury isn't theoretically, Your Honor, because the complaint plausibly alleges a design defect that renders a product useless. The fact that he's used it without incident doesn't mean that he hasn't suffered injury because he cannot use it. In a way, he's been lucky. And so, he can get an air fryer that works and doesn't pose that risk, but he's not interested in taking that. Your Honor, I believe that's kind of a cart before the horse argument because there's no legal or contractual authority that mandates him to accept this replacement air fryer. In fact, we argue that highly persuasive case law in the standing and mootness context actually says this type of replacement offer just constitutes a legal nullity. It doesn't do anything to impact his standing in the case. And that's in Campbell-Ewald v. Gomez and— I know about Campbell-Ewald. I was on the case, but I'm still trying to find out if his purported injury is more than theoretical. And so far, I hear what you say. There's many, many cases, Your Honor, where a safety defect provides a basis for a protection law. I think it really is Article III standing and his injury, in fact, as a matter of law, is plausibly alleged. The question about whether the replacement remedy somehow provides recourse that negates his Article III standing, Chattanooga v. Allstate, I think undermines that proposition entirely. And Gosari has really cited no other legal or contractual basis to force this replacement remedy on Mr. Tao in lieu of the legally provided remedies under the consumer protection laws of California. Has your client been denied? I mean, has he attempted to either get a refund or get a new air fryer? No, Your Honor. Instead, he's opted to pursue his statutory rights for himself and the class. And with that, I'll stop and save the rest of the time for rebuttal. Thank you. Thank you, counsel. Ms. Carlson? Good morning, and may it please the Court. My name is Sarah Carlson, and I'm here on behalf of Apelli Arovast Corporation. Your Honors, the timeline here matters. In May 2019, Mr. Tao bought an air fryer that worked exactly as intended. He used it for nearly four years without issue. In February 2023, together with the Consumer Product Safety Commission, Gosari announced a recall after less than a fraction of 1% of units reportedly had overheating issues, something Mr. Tao's unit never exhibited. It was only after and because of Gosari's announcement that Mr. Tao and his counsel rushed to the courthouse to file a complaint without allowing the recall to play out. Mr. Tao's complaint makes it clear that he challenges the sufficiency of the recall while refusing to participate in it. Yet the recall was submitted to and approved by the CPSC, the federal regulatory agency charged with supervising recalls and approving their remedies, and it provides a means to make Mr. Tao whole. Indeed, as plaintiff's brief alleges, Mr. Tao may have even received a full refund had he registered for the recall. In light of this timeline and these undisputed facts, the district court properly dismissed this case on prudential rightness grounds. This court should affirm. Before proceeding to the merits, I'll briefly outline my argument. I'll address three key points. First, as I touched upon, the district court correctly dismissed the case on prudential rightness grounds. Second, the court could have alternatively dismissed the case under the closely related doctrine of prudential moveness. And third, Mr. Tao lacks Article 3 standing. Turning to the first point, prudential rightness remains a viable doctrine and applies here because although Mr. Tao has had ample opportunity to participate in the CPSC recall, he just won't. Yet he still asks this court to adjudicate whether the recall is effective. And as the district court properly recognized, Mr. Tao is asking the court to deal with hypotheticals based on a remedial process in which he's refused to engage. And this is exactly why the district court dismissed on prudential rightness grounds and why the Ninth Circuit's recent decision in Stockton v. Brown requires affirmance. Stockton makes clear that prudential rightness remains binding law. This court's precedent also confirms that prudential asserting claims under California's unfair competition law, among others. Coleman applied prudential rightness to a private party dispute in the bankruptcy context. And consistent with this controlling precedent, the district courts have applied the doctrine in the warranty context in the analogous cases of Elkins v. Honda and Guan v. Mercedes-Benz. Prudential rightness applies whenever the claimed injury is speculative and the facts undeveloped. Exactly our case. Principle, which predates all of the decisions I just referenced, does not help Mr. Tao. That singular decision only declined to extend the Abbott Labs prudential rightness test to a private contract dispute, a narrow bilateral setting with no broader public or regulatory implications. But as has been acknowledged, the broader public and regulatory implications do exist here. At bottom, this is an administrative case. This lawsuit absolutely implicates a parallel administrative proceeding that Mr. Tao is explicitly challenging. The recall is being supervised by the CPSC. Evaluating the effectiveness of a CPSC supervised recall that Mr. Tao never used is precisely the kind of intrusion into an ongoing administrative process that prudential rightness counts as against. And jurisdictional discovery can't change that. As long as Mr. Tao refuses to participate in the recall, there's no additional information to uncover about his personal experience. The obstacle here is his own non-participation, not any factual gap in the record that discovery could fill. Second, this case also fails on prudential mootness grounds because the recall is already working to provide complete relief to consumers under CPSC supervision and has been doing so for nearly three years now. As then Judge Gorsuch explained in Winslow v. Toyota, once a manufacturer initiates a recall and sets into motion the great grinding years of the statutorily mandated and administratively overseen national recall process, judicial intervention serves no purpose. Judge Gorsuch also noted that perhaps the lawyers would benefit, but no one else would. And that's exactly our situation. CSORI's recall has been operating for nearly three years under CPSC oversight. Appellant, by contrast, has refused to participate and offers only speculation about inadequacy without ever attempting to use the recall. And as Winslow makes clear, the mere possibility of failure by a coordinate branch of government is not enough to defeat mootness. Do you have any information as to what proportion of the or if limited to California, the proposed class members have participated in the recall? I can only, the only information that's publicly available in the record, Your Honor, is that the recall has been ongoing and there has been no reannouncement and no change of remedy. The CPSC doesn't publish the take rate of CPSC regulated recalls. That information is confidential under the Consumer Product Safety Act, but it has been going on for three years and there's been no reannouncement, nor has there been a change in remedy. Third, Mr. Tao can't satisfy Article III. To begin with, he suffered no injury. His product never exhibited a defect. The Supreme... He arguably suffered at least a delay injury in the sense that once the word gets out that this particular product may not be safe, an intelligent consumer would stop using it and wouldn't have the benefit of being able to use it for whatever period of time it would take until there was a replacement. Do you have any information as to what that period of time would be? How long it took between the announcement going out and actual replacement of the product? The replacement of the product went in accordance with the recall's mandate. I don't have the exact time frame, nor is that in the record, but I do want to mention that the Supreme Court says that a hypothetical risk cannot create injury in fact. That's transunion and this court has applied the same... It's not a hypothetical risk. If you get worried that this thing might explode, you're going to stop using it and so you don't have the benefit of that product you already paid for for at least some period of time. Isn't that a loss? Well, it depends when the plaintiff registers and provided info, but as soon as he did so, he registered and provided the necessary information, he would have received a brand new product of equal or greater value, not limited to an air warranty. In other words, he would have been made a full plus. You're not speaking to the period of time. I understand you may not know what that is, but I have to assume it'd be at least some number of months. I got this product I paid for, but I'm afraid to use for some period of months. Isn't that at least on some level an injury? The case law doesn't say so, Your Honor, because there's been cases... You got a case law that says it isn't? I mean, on its face, it obviously is. If I've got a car that's broken and I can't use it for six months, what am I supposed to do? Fortunately, an air fryer may not be as critical to daily life as a car, but he's paid for something he can't use. I'm not sure I can understand that there's no injury at all. It may not be the injury he's injured. I would say that, and these are district court cases, Your Honor, but that in Combs, Sugasawara, and Charlton, those were all cases where a plaintiff had some delay, either by virtue of participating in a CPSC recall or in a warranty program, and the court there found no standing for injury despite that delay. So there's an injury, but it's too small to count? Your Honor, I want to say also that any purported injury, such as this delay that we're talking about, would be entirely traceable to Mr. Tao's own refusal to participate in the recall in a manner that in that recall would give him the very benefit of the bargain he claims to have lost. As I said, Combs, Sugasawara, and Charlton all make the same point. When a recall cures the alleged defect and the plaintiff declines to use it, the remaining harm is self-inflicted and it can't satisfy Article 3. Accordingly, this court should affirm the lower court's dismissal. Look, as earlier stated, CPSC recalls are designed to promote transparency and to protect consumers by encouraging companies to raise their hand and provide a remedy. Letting an uninjured plaintiff weaponize that process would undermine those objectives. After three years, Mr. Tao's refusal to participate in the recall, which his co-plaintiff did so and received a full refund, reinforces that this is a lawyer-driven lawsuit. Whether under prudential rightness, prudential mootness, or Article 3, Mr. Tao's claims cannot and should not survive. One more thing, Your Honor, going back to your test. Under your injury theory, under your doctrine of prudential rightness, Mr. Tao is entitled to participate in the recall process. Once the recall process is over, he can see what, if any, claim is left after participating. It's my contention that any claim would be non-justiciable due to lack of standing and lack of injury, but we're not depriving him of his day in court, this unflagging obligation to have his claims heard. We're simply saying that he should follow the recall process so that the court does not have to assess on multiple occasions whether or not he still has standing to pursue his claims. Thank you, Your Honor. Mr. Sweeney? Thank you, Your Honor. I'll address counsel's first point regarding whether the prudential rightness doctrine should be tabbed into administrative cases. They cite Chandler. That case is very much an outlier. The prudential rightness factors were considered, but the doctrine itself wasn't even mentioned, nor was consideration of principle. And another case, Golden versus California Emergency Physicians Medical Group, where the court also refused to apply the prudential rightness doctrine in a private contract dispute centering on the terms of a settlement agreement. Really, the district court's view of the prudential rightness doctrine improperly transformed and expanded the doctrine from one intended to prevent judicial interference in the ongoing affairs of government agencies into a doctrine that puts private defendant in the driver's seat and allows it to block litigation, access to statutorily prescribed monetary remedies, and also allows it to unilaterally provide a remedy of its own choosing without any meaningful showing that that remedy provided any meaningful relief to the class at large. And even during this oral argument, again, defense counsel has remained silent on the who participated in the recall. You say there's no meaningful relief, but if the customer is able to get the product or a different product from the company up to whatever value and so forth and get a new warranty, how is that not meaningful relief? The product that was purchased is obtained. The question remains, Your Honor, how many of these class members even received notice? How many of them received replacement in their priors? How many received refunds, even though that wasn't supposed to be part of the recall, just indicates that the replacement recall was sort of just a pretext to avoid liability as we allege in the complaint. I want you to address the self-inflicted harm. I understand what you're saying in terms of, you know, there's people who may have not received notice and things like that, but your client received notice. Your client knows that there is a recall and that he has, you know, he can request either a new air fryer or an equivalent or even potentially a refund. What do we make of that? Can people just say, eh, forget it. I want to sue you. I want punitives. Your Honor, the injury here is not self-inflicted. Just as an initial matter, this product suffers from a safety defect. It cannot be used. So that injury exists. The question really comes down to, do they have to participate in the replacement recall? And there's no legal or contractual authority that requires my plaintiff to do that, particularly when he's seeking to seek compensation for the class as well. And it's not a self-inflicted harm. It's his right under the law. And as the Supreme Court stated in Lexmark, the federal judiciary cannot ignore its duty to hear cases. I want to follow up on both of my colleagues' questions. Do you have, counsel for the company was not able to tell us what the time was between the noting the defect and issuing the recall. Do you have any idea what that timeline was? The only idea I have is from what we alleged in the complaint, which is complaints from hundreds of consumers on Facebook and on the internet in various forms saying that I didn't ask how many people. I asked the timeline. Do you have any idea from the time that the defect was first noted until the time that the recall or refund was proposed? Do you have any idea how much time that was? Just to go to Judge Clifton's question about the damages that your client might have suffered from having been from the non-use of a fryer. The delay from what I can garner from public reports is egregious, your honor. It ranged from months or to never receiving a replacement at all. Instead, when Casari recognized that it couldn't provide replacements because we argue the replacement is really a pretext, it started just handing out checks to people, even though it says you're not entitled to refunds. All right. Let me shift the question. Counsel, if your client had diligently pursued either a refund or a new fryer and the defendant had properly and promptly provided either a refund or a new fryer, does he still have a lawsuit? He still has a lawsuit. He has a lawsuit use product for a certain amount of time. Loss of use is recognized in plenty of case law as a form of injury. But again, you don't know what time that would be, what the timeframe would be for that. Based on the public reports I've seen, it would take months, at least weeks, but months, perhaps never, to receive a replacement. Instead, Casari would provide you a refund if you made enough noise. Okay. So what your lawsuit might really boil down to is simply the loss of use of product. If we go to use that. Both compensation and punitives. That would be a form of damages, Your Honor, but we also maintain that we're entitled to a full refund and our rights under the substantive and procedural law, which allows us to bring these for Mr. Tal himself and on behalf of the class, many of whom are individuals that have no idea that recall even exists, never received a replacement and never received any money. It's very, very likely that hundreds of thousands of class members never received any compensation for this scheme, excuse me, for Casari's deception. And as far as public policy is concerned, Casari can say, well, we're here trying to do the right thing. But in reality, there was 205 reports of fire, nine reports of injury, 30 some odd reports of personal property damage. To come in here and say we're doing the right thing is a little bit disingenuous when in reality, that means they ignored 204 reports of fire, greatly placing consumer lives in danger. And we feel that the court should reverse and remand for consideration of this case on the argument. Okay. Thank you, counsel. The matter is now submitted. This concludes our arguments for today. Thank you again. And thank you to the court staff for their wonderful assistance.
judges: CLIFTON, BYBEE, ALBA